## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR76 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAYLAN DEWAN DORTCH, | ) | |
| | ) | |
| Defendant. | ) | CONSOLIDATED |
| | | REPORT AND |
| UNITED STATES OF AMERICA, | ) | RECOMMENDATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 8:08CR77 |
| | ) | |
| JAMES TYRELL DORTCH, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motions to suppress filed by defendant Daylan Dewan Dortch (Daylan Dortch) (Filing No. 14) and by defendant James Tyrell Dortch (James Dortch) (Filing No. 15).[1]  Although the defendants are charged in separate indictments, the court ordered a consolidated hearing on the motions (Filing No. 18 in 8:08CR76 and Filing No. 22 in 8:08CR77).

Daylan Dortch is charged in the Indictment against him (8:08CR76) with the possession of a firearm, a Hi-Point 9mm pistol, after having been convicted of a felony (Count I) in violation of 18 U.S.C. § 922(g) and a forfeiture count regarding the firearm (Count II) pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).  James Dortch is charged in the Indictment against him (8:08CR77) with the possession and receipt of the

---

[1]As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in these two cases.  This document also contains links to the Nebraska local rules and legal citation from the federal reporters.  The hyperlinked documents appear in blue unlined text.  Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements.  The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

same firearm which had its serial number obliterated or erased in violation of 18 U.S.C. § 922(k) and a forfeiture count regarding the firearm (Count II) pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

Both defendants seek to suppress evidence obtained by the Omaha Police Department (OPD) on September 28, 2007, following a traffic stop of a Nissan Xterra automobile driven by Daylan Dortch and in which James Dortch was a passenger. A consolidated evidentiary hearing was held on both suppression motions on April 24, 2008. Daylan Dortch was present for the hearing along with his appointed counsel, First Assistant Federal Public Defender Shannon P. O'Connor. James Dortch was present for the hearing along with his appointed counsel, Brian S. Munnelly. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. During the hearing, the court heard the testimony of OPD Officers Craig Wylie (Officer Wylie), Jason Slosson (Officer Slosson), and Gerald Baggett (Officer Baggett). The court also received into evidence the following exhibits: a copy of Nebraska Statute § 60-6,161 (Exhibit 1); a copy of Nebraska Statute § 60-3,100 (Exhibit 2); a photograph of an opened Nissan glove box (Exhibit 3); a photo of an opened Nissan glove box with the rear panel peeled back (Exhibit 4); an OPD Rights Advisory Form for Daylan Dortch (Exhibit 5); a CD of a recorded statement of Daylan Dortch (Exhibit 6); an OPD Consent To Provide DNA Sample form for Daylan Dortch (Exhibit 7); an OPD Rights Advisory Form for James Dortch (Exhibit 8); an OPD Consent To Provide DNA Sample form for James Dortch (Exhibit 9); a CD of a recorded statement of James Dortch (Exhibit 10); a copy of Nebraska Statute § 47-1113 (Exhibit 101). A transcript of the hearing (TR.) was filed on May 1, 2008, in both cases (Filing No. 26 in 8:08CR76 and Filing No. 30 in 8:08CR77).

**FINDINGS OF FACT**

On September 28, 2007, officers of the OPD Gang Suppression Unit (Gang Unit) were conducting surveillance of the Myers Funeral Home at 22nd and Lake Streets in Omaha (TR. 5). A funeral of a known gang member was taking place, and the Gang Unit had received information there was going to be a retaliatory drive-by shooting at the funeral (TR. 5). OPD Officers Wylie and Slosson were seated in a marked OPD cruiser across

from the funeral home (TR. 6). Around 7:08 p.m., Officers Wylie and Slosson observed Daylan Dortch and Luther Humphrey (Humphrey) walk away from the funeral home parking lot into an alleyway (TR. 7). When Daylan Dortch and Humphrey returned a few minutes later, Daylan Dortch's gait was altered (TR. 7; 54-55). The officers suspected that Daylan Dortch was concealing contraband or weapons on his person by reason of his altered gait (TR. 7; 55). Officer Wylie testified he made such inference from his experiences and training (TR. 8). When Daylan Dortch and Humphrey returned, they along with James Dortch, entered a red Nissan Xterra in the funeral home parking lot (TR. 10-11). Daylan Dortch entered the driver's side of the Nissan, James Dortch entered as the front seat passenger, and Humphrey entered as the rear seat passenger (TR. 11). The Nissan drove out of the funeral home parking lot onto 22nd Street, came northbound on 22nd Street, and then turned west on Lake Street (TR. 11). In so doing, the Nissan passed by Officer Wylie and Slosson's stationery surveillance vehicle and the officers noted the Nissan did not have a front license plate (TR. 11; 56). When the Nissan turned left onto Lake Street, the Nissan did not signal its turn (TR. 11-12; 56). Officers Wylie and Slosson gave pursuit and stopped the Nissan (TR. 12; 57).

Officer Slosson approached the driver's side of the Nissan and Officer Wylie approached the passenger side of the Nissan (TR. 12). At some point after the stop, Officer Slosson noted the rear license plate of the Nissan was from Oklahoma (TR. 59). The front seat passenger, James Dortch, was not wearing a seat belt (TR. 13). Officer Slosson asked the driver, Daylan Dortch, for a driver's license, vehicle registration, and insurance (TR. 59). Daylan Dortch produced a rental agreement for the Nissan in the name of Ron Smith (TR. 59). Daylan Dortch identified himself as Dale Dortch (TR. 60). The front seat passenger was identified as James Dortch and the back seat passenger was identified as Humphrey (TR. 60). Officer Slosson took the paperwork back to the cruiser and ran a data check and found no wants or warrants for the vehicle or its occupants (TR. 60). Officer Slosson returned the paperwork to Daylan Dortch, told Daylan Dortch he was free to go, and asked if he had any problem with the officers searching the vehicle or the occupants' persons for any illegal contraband (TR. 61). Daylan Dortch told

Officer Slosson "Sure. I have nothing to hide" (TR. 61). Thereupon, the officers had the occupants get out of the vehicle so the officers could search the vehicle (TR. 61).

Officer Wylie searched the front passenger side of the vehicle including the glove box area (TR. 16). By shining his flashlight through a crack in the glove box, Officer Wylie observed the receiver of a handgun (TR. 16; 45). Officer Wylie pulled back part of the backing of the glove box and found a Hi-Point 9 millimeter handgun (TR. 17; Exhibits 3 and 4). All three occupants were arrested and transported to Central Police Headquarters (TR. 18).

At Central Police Headquarters Officer Wylie advised Dylan Dortch of **Miranda** rights (Exhibit 5) which Dylan Dortch waived and agreed to be interviewed and to provide a DNA sample (Exhibit 7). James Dortch was advised of **Miranda** rights by Officer Slosson (TR. 62). James Dortch waived his rights, agreed to be interviewed, and agreed to provide a DNA sample (TR. 62; Exhibits 8-12). There was no evidence to suggest that the statements provided by either defendant were anything but voluntarily given.

## LEGAL ANALYSIS

"[A] police officer who observes a traffic violation has probable cause to stop the vehicle and its driver." *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). In this case Officers Wylie and Slosson observed the Nissan leaving the funeral home parking lot fail to signal its turn onto Lake Street. Furthermore, the officers initially believed the Nissan had a missing front license plate. This belief was later found to be unwarranted as the Nissan was licensed in Oklahoma, a state does not require a license plate on the front and back of the car. Thus, the officers had probable cause to stop the Nissan for a traffic violation. While the officers had an ulterior motive in stopping the Nissan because of the observation of Daylan Dortch while walking from the alleyway to the Nissan in the funeral home parking lot and suspecting he was hiding a firearm or contraband, such motive is immaterial as the officers had an independent basis to stop the Nissan. "Even assuming [the police officer] was looking for [the defendant], it would be 'objectively reasonable' to pull over a vehicle

which was" engaging in a traffic offense. *United States v. Miller*, 20 F.3d 926, 929 (8th Cir. 1994).

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and the issuing of a citation. *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In this case, Officer Slosson made such routine checks in a timely manner and informed Daylan Dortch he was free to leave, but asked if the officers could search the Nissan. Daylan Dortch was unequivocal in his consent by saying: "Sure. I have nothing to hide" (TR. 61). The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 40 (1996). Under the circumstances of the stop in this case, the court finds Daylan Dortch's consent to be voluntary and justifying the police officers' search of the Nissan resulting in the finding of the handgun behind the glove compartment.

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). In this case, both Daylan Dortch and James Dortch were advised of their constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). There is no evidence either Dortch did not understand the advice of rights. Both waived their rights and consented to be interviewed. Both consented to provide a DNA sample. In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne. *United States v. Jimenez*, 478 F.3d 929, 933 (8th Cir. 2007). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *Schneckloth*, 412 U.S. at 225-26. The court has considered the totality of the circumstances and the relevant factors in

determining whether the statements made by Dylan Dortch and James Dortch were voluntary and finds each statement to be voluntary and admissible at trial.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Daylan Dortch's motion to suppress (Filing No. 14 in 8:08CR76) and James Dortch's motion to suppress (Filing No. 15 in 8:08CR77) be denied in their entirety.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 11th day of June, 2008.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge